# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

Fall 2024 Term

_____

No. 24-ICA-35

_____

FILED

**November 13, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

IN RE: C.S.

_____

Appeal from the Family Court of Wood County

Honorable Ellen L. Smith, Judge

Civil Action Nos. 13-FIG-5 and FC-54-2020-D-64

AFFIRMED

_____

Submitted: October 29, 2024
Filed:  November 13, 2024

Gabrielle R. Flanagan, Esq.
Klie Law Offices, PLLC
Buckhannon, West Virginia
Counsel for Petitioner

Virginia A. Conley, Esq.
Conley Law Office, PLLC
Parkersburg, West Virginia
Counsel for Respondent

Jeffrey B. Reed, Esq.
Parkersburg, West Virginia
Guardian Ad Litem

JUDGE DANIEL W. GREEAR delivered the Opinion of the Court.

GREEAR, JUDGE:

Petitioner Oshelle M.[1] ("Guardian Mother") appeals the Family Court of Wood County's December 28, 2023, Amended Final Custody Order naming Jeffrey M. ("Guardian Father") as the custodial guardian of the minor child, C.S. ("child"), and awarding Guardian Mother limited supervised visitation with the child. On appeal, Guardian Mother argues multiple assignments of error, the most significant being that the family court erred in failing to apply West Virginia Code § 48-9-102a (2022) to the underlying case. Based upon our review of the record and applicable law, we find no error in the family court's rulings. The parties herein, Guardian Mother and Guardian Father, do not meet the definition of "legal parents" contained within West Virginia Code § 48-1-232 (2001) and as described in *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 (2005). Accordingly, as Guardian Mother and Guardian Father are not legal parents, West Virginia Code § 48-9-102a is inapplicable to the instant case. As more fully described herein, we affirm the December 28, 2023, Amended Final Custody Order of the Family Court of Wood County.

---

[1] *See, e.g.*, W. Va. R. App. P. 40(e). Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R., II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The parties were married on October 13, 2001. By order entered January 30, 2013, they became co-guardians of C.S., born July 5, 2011, and then eighteen months old. The child's biological mother, who is still living, consented to the guardianship, and her parental rights have not been terminated.[2] The parties separated in January of 2020. On January 24, 2020, Guardian Mother filed a petition for separate maintenance and a petition to terminate/modify the co-guardianship of the child, seeking shared parenting of the child.[3] Guardian Mother alleged that Guardian Father was unable to care for the child due to his work schedule. Guardian Father filed a counter-petition for divorce in August of 2020 and sought custody of the child.

A preliminary hearing was held in family court on August 13, 2020. The court awarded the parties shared custodial responsibility and temporary decision-making authority for C.S., with Guardian Mother receiving parenting time from Tuesday at 5:00 p.m. until Thursday at 5:00 p.m., and Guardian Father having all other parenting time. Shortly after the preliminary hearing, the family court appointed Jonny C. Woods, II, as Guardian ad Litem ("GAL") for the minor child.

---

[2] No information regarding C.S.'s biological father is contained within the record. In the January 30, 2013, Order of Appointment of Minor Guardian, C.S.'s father is not listed by name, the order simply states "Father, who is living."

[3] The parties are also parents to a biological son, J.L.M., who is an adult and, thus, not a subject of this appeal.

A temporary hearing was held on August 29, 2022. During that hearing, the court received a supplemental written report from the GAL and heard sworn testimony from Guardian Mother, Jenny Houser (friend of the Guardian Mother), and J.L.M. (the parties' then eighteen-year-old son).[4] Under oath, J.L.M. described a number of incidents involving Guardian Mother's alleged mental/psychological abuse of him throughout middle and into high school.[5] After his testimony, the family court judge, who was active in questioning J.L.M. stated to counsel:

> I got to be frank with you all. I mean, given his [J.L.M.'s] testimony, his testimony was very compelling, painful, exhausting. I don't know what words I am looking for, but it was all of that and then some. I quite frankly am not sure this child, meaning [C.S.] is even safe to have unsupervised time with [Guardian Mother]. I mean that's where I'm at.
>
> * * *
>
> I've spent an hour and a half listening to [J.L.M.] and asking questions I had and I'm disturbed.[6]

In response, counsel for Guardian Mother advised the court, "[w]ell, it's our position that he's not being truthful. He is angry at his mom for certain. He's an [eighteen]-year-old." To which the court noted,

---

[4] While Guardian Father did not formally testify at the August 29, 2022, hearing he was sworn under oath at the beginning of the hearing and did make statements to the court and counsel during the hearing.

[5] We note that the record contains an "unofficial transcript of proceeding – August 29, 2022[.]"

[6] *See* Petitioner's appendix at page 316.

[b]ut not one single question posed to him during the cross examination even alleged any motive for him to come in here and tell this tale. There was nothing, absolutely nothing brought out during cross-examination of him that would lead me to think this kid was lying. In fact, the kid had tears in his eyes and didn't even want to be here, and that was obvious. He was about as genuine as a witness as I've had recently.[7]

On September 6, 2022, the family court entered its temporary order following the August 29, 2022, hearing and awarded Guardian Father "temporary primary custodial responsibility and temporary sole decision-making authority for [C.S.]." Guardian Mother was "allocated supervised visitation with [C.S.] each and every Sunday from 1:00 p.m. until 5:00 p.m." Further, the family court ordered Guardian Mother to submit to a parental fitness exam with Saar Psychological Group, which she attended on November 29, 2022.

In his report issued following the exam, Dr. Timothy S. Saar found it concerning that Guardian Mother "endorsed continued suicidal ideation and depression, while reporting negative perceptions of [C.S.] on her parenting assessments."[8] Further, Dr. Saar concluded that "[g]iven the reports of her behaviors, her denial of such, and the possibility that she lacks insight into her behaviors or the motivation to change them, [Guardian Mother's] prognosis for improved parenting, within a reasonable degree of psychological certainty, is guarded to poor."

---

[7] *See* Petitioner's appendix at page 316.

[8] We note that Guardian Mother denies that she has ever had any suicidal ideation. Further, we note that she denies having any made any expression of suicidal ideation to Dr. Saar.

4

A final hearing was held in family court on March 27, 2023. At that hearing, the family court reviewed the parental fitness report of Dr. Saar and heard the testimony of the parties. During this hearing, the court again noted that "I don't think anybody has provided any evidence that supports [J.L.M.] not being truthful."[9] Further, the court noted that to adopt the arguments advanced by Guardian Mother, the court would have to "totally dismiss [J.L.M.'s] testimony. And I don't. I don't dismiss [J.L.M.'s testimony] . . . [J.L.M.'s] testimony was so damning that I think that's all I really needed to hear on that."[10]

On September 27, 2023, the family court entered a Custody Order from the March 27, 2023, hearing. In this order, the court denied Guardian Mother's request for increased parenting time with the child and continued Guardian's Mother's four hour weekly supervised visits with the child. On December 28, 2023, the family court filed an Amended Final Custody Order, including findings of fact and conclusions of law, ordering that Guardian Father remain the custodial guardian for the child, and providing Guardian Mother with four hours of weekly supervised visitation with the child. Further, this order noted that, pursuant to Rule 22(c) of the West Virginia Rules of Practice and Procedure for Family Court, this was an appealable final custody order.[11] It is from the December 28, 2023, Amended Final Custody Order that Guardian Mother now appeals.

---

[9] *See* Petitioner's appendix at page 360.

[10] *See* Petitioner's appendix at page 361.

[11] While the parties' custody issues were resolved by the family court's December 28, 2023, Amended Final Custody Order, other issues between the parties remained

## II. STANDARD OF REVIEW

When reviewing the order of a family court, the Supreme Court of Appeals of West Virginia ("SCAWV") has held that:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders). Our review of this matter is further guided by the SCAWV's recognition, in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Likewise, in syllabus point one of *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995), the SCAWV held "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." With these standards in mind, we now address Guardian Mother's arguments on appeal.

---

before the court at that time, including equitable distribution, child support, and spousal support. This appeal does not address any of these issues, as those issues are not presently before this Court for review.

## III.    DISCUSSION

In her first four assignments of error, Guardian Mother contends that: (1) the family court erred by not entering an order on the final parenting plan in a timely manner; (2) by failing to consider West Virginia Code § 48-9-102a; (3) by failing to find that the evidence presented was insufficient to support a deviation from equal allocation of custody; and (4) by failing to make sufficient findings of fact and conclusions of law to support a deviation from the equal allocation of custody. As to her final assignment of error, Guardian Mother asserts that the family court exhibited bias against her during the proceedings. As assignments of error two and three are interrelated, we will address those assignments together; however, we will first address the remaining assignments of error.

In her first assignment of error, Guardian Mother argues that the family court failed to comply with Rule 22(a) of the Rules of Practice and Procedure for Family Court,[12] as the final order from the March 27, 2023, hearing was entered well outside the deadline set forth in Rule 22(a). On appeal, Guardian Mother argues that "[b]ecause a rule was broken" she "lost [the] opportunity to parent" and a "judicial inefficiency" was created. *See* Petitioner's brief at page 13. While Guardian Mother is correct that the order from the March 27, 2023, hearing was not entered until approximately nine months following said

---

[12] Rule 22(a) of the Rules of Practice and Procedure for Family Court provides, in pertinent part, that "[a]ll orders shall be entered by the court within 20 days of the hearing[.]"

7

hearing, the record below reflects that Guardian Mother took no action to compel entry of the order.

The SCAWV has long held that "[a] litigant may not silently acquiesce to an alleged error, or actively contribute to such error, and then raise that error as a reason for reversal on appeal." Syllabus Point 1, *Maples v. West Virginia Dep't of Commerce, Div. of Parks & Recreation*, 197 W. Va. 318, 475 S.E.2d 410 (1996). Here, from the time of the March 27, 2023, hearing until the entry of the September 27, 2023, order, there were no motions for entry of an order filed by Guardian Mother (or any other party). Guardian Mother made no attempts to schedule further hearings on custody issues and she did not initiate any mandamus proceeding to compel entry of the order. Simply stated, she did nothing proactively to facilitate the entry of the order at issue. Moreover, during this same time frame, Guardian Mother requested a continuance in the case and obtained new counsel, thus herself possibly adding to any delay. Accordingly, we find no error.

In her fifth assignment of error, which somewhat overlaps with her fourth assignment of error (arguing insufficient findings of fact and conclusions of law within the family court's December 28, 2023, Amended Final Custody Order), Guardian Mother argues that the family court continuously showed "extreme and improper bias" against her. Generally, in response to allegations of judicial bias, the party contending bias would seek disqualification of the offending judge, pursuant to Rule 58 of the Rules of Practice and Procedure for Family Court. In fact, in her appellate brief, Guardian Mother suggests that

8

unless a "new judge seated by special assignment" is appointed in this case, the family court "will continue to act upon its bias to the detriment of" Guardian Mother and the child. However, despite her statement now expressing the need for disqualification of the family court judge, no motion for disqualification of the family court judge was filed by Guardian Mother below. As noted in Rule 58, which references Rule 17 of the Trial Court Rules, decisions regarding disqualification of judges are made by the Chief Justice of the SCAWV and are not the province of this Court. Thus, to the extent that Guardian Mother claims any error due to the failure to disqualify the family court judge or asks this Court to appoint a special judge, we decline to address these issues, as they are not within the province of this Court.

Moreover, we have reviewed the record below and find no evidence of bias on the part of the family court judge and no prejudice to Guardian Mother. While Guardian Mother may not agree with the credibility determination made by the family court below and take offense to the friendly yet direct style of the family court judge, the same is not tantamount to bias. This Court has previously found that we

> cannot set aside a family court's factual findings "unless they are clearly erroneous." A finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Under the clearly erroneous standard, an appellate court does not reweigh the evidence and cannot reverse a family court's findings simply because it may have viewed the evidence differently. *See Mulugeta v. Misailidis*, 239 W. Va. 404, 408, 801 S.E.2d 282, 286 (2017). Further, a family court is entitled to deference to the extent it relies on

9

determinations it made of the parties' credibility. *See Thomas E. v. Amy F.*, No. 13-0176, 2013 WL 5708438, at \*2 (W. Va. Oct. 21, 2013) (memorandum decision).

*James W. v. Ciara R.*, Nos. 23-ICA-237, -238, and -239, 2024 WL 1740353, at \*6 (W. Va. Ct. App. Apr. 22, 2024) (memorandum decision). Here, the record supports the findings of the family court judge set forth in the December 28, 2023, Amended Final Custody Order. Specifically, we find no error in the family court's reliance upon the testimony the parties' son, J.L.M. During the hearing at which J.L.M. testified, the court made particular notations in the record regarding his sincerity and credibility. While Guardian Mother suggested, at the parties' hearing in March of 2023, that the testimony of J.L.M. was not credible, as it was motivated by anger towards his mother, the family court found that J.L.M.'s testimony was credible. Further, during that hearing, the family court questioned Guardian Mother's counsel that if she believed J.L.M.'s testimony was false or motivated by an intent to punish his mother, then counsel should have questioned J.L.M. regarding such motives during his testimony. Here, Guardian Mother had the opportunity to cross examine J.L.M. during his testimony and did not address any alleged bias he may have had towards his mother. Thus, given Guardian Mother's failure to question J.L.M. regarding his alleged ill-motives and in giving deference to the credibility determinations of the family court, which are supported by the record, we find no error. Along that same vein, we find that the family court's December 28, 2023, Amended Final Custody Order included detailed findings of fact and conclusions of law and Guardian Mother's simple disagreement with the court's weighing of the evidence does not entitle her to relief. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility

10

of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact.").

The remaining assignments of error, two and three, turn upon whether the equal (50-50) custody presumption under West Virginia Code § 48-9-102a applies to the instant case, as the parties are not the biological or adoptive parents of C.S., but serve only as his custodial guardians. Guardian Mother asserts that the family court failed to apply the equal (50-50) presumption and failed to make sufficient findings of fact and conclusions of law to support its decision. Conversely, Guardian Father argues that the court's order is sufficient regardless of whether the case falls within the parameters of West Virginia Code § 48-9-102a or otherwise.[13]

In determining if the parties are the legal parents of C.S., such that West Virginia Code § 48-9-102a would apply, we begin by noting the West Virginia Legislature's intent, as expressed in West Virginia Code § 48-9-101. The Legislature states that Chapter 48 of the West Virginia Code "sets forth principles governing the allocation of custodial

---

[13] Initially, we note that the Amended Final Custody Order fails to satisfy the requirements of an order deviating from presumed equal custody under Chapter 48 of the West Virginia Code. In its order, the family court admittedly does not discuss the statutory presumption created by West Virginia Code § 48-9-102a, does not address directly the limiting factors set forth in West Virginia Code § 48-9-209 (2024), and does not adequately address its reasoning to satisfy the technical requirement of West Virginia Code § 48-9-206(d) (2022).

11

and decision-making responsibility for a minor child when the parents do not live together."

Legal parent is defined by West Virginia Code § 48-1-235.1 as "defined in section 1-232 unless otherwise specified." Legal parent is defined in West Virginia Code § 48-1-232 as "an individual defined as a parent, by law, on the basis of biological relationship, presumed biological relationship, legal adoption or other recognized grounds." Here, there is no dispute that neither of the parties herein are the biological parents, presumed biological parents, or adoptive parents of C.S. As to whether the parties may be deemed C.S.'s "legal parents" under the "other recognized grounds" we turn to the SCAWV's analysis of this issue in *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 (2005). In *In re Clifford K.*, the Court reasoned that

> [t]he phrase "other recognized grounds" refers to those individuals or entities who have been formally accorded parental status or the functional equivalent thereof by way of statute or judicial decree. Such parental status is comparable to the rights and responsibilities of a biological or adoptive parent and includes, but is not limited to, the right to care, control, and custody of the minor child; the right to consent or object to the child's adoption by another person; and the duty to support the child.

Syl. Pt. 1, in part, *In re Clifford K.*, 217 W. Va. at 629, 619 S.E.2d at 142 (2005).[14] Thus, per the *Clifford* Court, in order to meet the criteria of "other recognized grounds[,]" at a

---

[14] We acknowledge that *In re Clifford K.*, is not directly on point to the instant case. In *Clifford*, the domestic partner of the deceased mother was found to not have standing to seek custody of the infant child, as she did not meet the definition of legal parent in West Virginia Code § 48-1-232. However, the SCAWV concluded that the partner did have

12

minimum, there must be showing of three factors: the right to care, control, and custody of the minor child; the right to consent or object to the child's adoption by another person; and the duty to support the child. Here, upon the creation of the legal guardianship in 2013, the parties were granted the care, control, and custody of the minor child. Thus, the first factor is satisfied.

However, whether the parties herein possess the right to consent to adoption, factor two, is a more complicated legal issue. Under West Virginia Code §48-22-301(a)(3) the consent of the birth mother of a nonmarital child is required for an adoption. West Virginia Code § 48-22-301(d) (2018) further states that

> [i]f all persons entitled to parental rights of the child sought to be adopted are deceased or have been deprived of the custody of the child by law, then consent or relinquishment is required of the legal guardian or of any other person having legal custody of the child at the time.

Accordingly, a plain reading of West Virginia Code § 48-22-301 would require the consent of both the natural parents and the Guardian Mother and Guardian Father for adoption. Thus, while the guardians herein appear to have some right to participate in any adoption proceedings that would involve C.S., their rights do not equal those of C.S.'s natural parents, in that the guardians could not unilaterally consent to any adoption of C.S. without the additional consent of the natural parents.

---

standing under the exceptional circumstances doctrine codified in West Virginia Code § 48-9-103(b) and because she was the child's psychological parent.

As to the remaining factor, we find that the parties herein have no duty to support the minor child outside of the guardianship framework. While the record is silent on any current child support obligations of the biological parents of C.S., we note, generally, that legal guardians are authorized under West Virginia Code § 48-18-113(b) to receive child support payments on behalf of the child from the natural parents.[15] Here, C.S.'s natural parents still have a legal duty to support the child. *See In Re Adoption of H.G.* 246 W. Va. 105, 866 S.E.2d 170 (2021); *State ex rel. Shepard v. Holland*, 219 W. Va. 310, 633 S.E.2d 255 (2006) (The duty of a parent to support a child is a basic duty owed by the parent to the child, and a parent cannot waive or contract away the child's right to support). However, once a guardianship is dissolved, the guardians would owe no additional duty to the child. Thus, we find that the parties herein do not maintain a duty to support the minor child equivalent to that of the natural or legal parent. Accordingly, we find that the parties do not meet the definition of "legal parents[,]" as they cannot be the functional equivalent of a biological or adoptive parent, while a biological parent maintains parental rights. For the foregoing reasons, we find that the family court was not bound by the requirements of West Virginia Code § 48-9-206(d) when determining the final custodial allocation between the parties, as the parties did not fall within the statutory definition of "legal parents" pursuant to West Virginia Code § 48-1-232 and the SCAWV's ruling in *In re Clifford K.*

---

[15] *See* West Virginia Code § 48-18-113(b) (2005).

14

As the family court was not technically bound by Chapter 48 in its determination of custody between the Guardian Father and Guardian Mother, we cannot find that the family court abused its discretion in making its decision.[16] Even if insufficient to meet the technical requirements of Chapter 48, we find that the court's December 28, 2023, Amended Final Custody Order did contain sufficient findings of fact justifying its decision based upon the evidence presented. In particular, as noted above, the family court relied on the testimony of J.L.M. and the Saar parental fitness exam report. The family court found the testimony of J.L.M. describing mental/psychological mistreatment by Guardian Mother of himself to be credible. The family court further relied upon Dr. Saar's parental fitness exam report, in which he found Guardian Mother to have negative views of the minor child and found a guarded to poor prognosis of Guardian Mother's parenting ability. The record reveals no appreciable attempt by Guardian Mother to rebut either of these critical pieces of evidence below.

Because we have concluded that Chapter 48 of the West Virginia Code was not directly applicable to the parties' custody dispute, we find that the family court did not err by failing to consider West Virginia Code § 48-9-102a; by failing to find that the evidence presented was not enough to support a deviation from equal allocation of custody;

_____

[16] While not bound technically by Chapter 48 of the West Virginia Code, it is reasonable for the family court to turn to Chapter 48 for guidance as to the best interest of the child in custody cases such as this, which fall outside the technical scope of Chapter 48. In such situations, the best interest of the child will continue to be the paramount consideration. Chapter 48 represents the Legislature's articulation of the manner in which the best interest of the child should be determined in custody situations.

or by failing to make sufficient findings of fact and conclusions of law to support a deviation from equal custody.

## IV.    CONCLUSION

For the foregoing reasons, the Family Court of Wood County's order dated December 28, 2023, is affirmed.

Affirmed.